UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| M.P.G., for herself and as next friend for T.N.P., her minor child,<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY; PETER T. GAYNOR, in his official Capacity as Acting Secretary of DHS; U.S. CUSTOMS AND BORDER PROTECTION; MARK MORGAN, in his official Capacity as Senior Official Performing the Duties of the Commissioner; GLORIA I. CHAVEZ, in her official Capacity as Border Patrol Chief for the El Paso Sector of the U.S. Border Patrol; U.S. IMMIGRATION & CUSTOMS ENFORCEMENT; TAE JOHNSON, in his official capacity as Senior Official Performing the Duties of ICE Director; JOSEPH CORREA, SR., in his official capacity as Director of the ICE Enforcement and Removal Operations San Antonio Field Office,<br><br>*Defendants*. | No. 3:21-cv-00010<br><br>Civil Action |

## COMPLAINT SEEKING INJUNCTIVE RELIEF

### PRELIMINARY STATEMENT

1. This lawsuit seeks to compel the Government to comply with non-discretionary statutory duties and binding regulations that establish simple procedural safeguards against the removal of individuals to countries where their lives are threatened.

2. Plaintiffs are a Salvadoran mother, M.P.G.,[1] and her twelve-year-old daughter, T.N.P., who experienced persecution in their home country of El Salvador on account of their

---

[1] Plaintiff, M.P.G., files a motion seeking leave to use a pseudonym in this litigation. *See* ECF Dkt. 2.

1

political opinion and their familial relationship to M.P.G.'s husband, T.N.P.'s father.

3. In July 2019, M.P.G. and T.N.P. entered the United States in or near El Paso, Texas to request asylum. They were subsequently returned to Mexico pursuant to the Migration Protection Protocols ("MPP"), whereby asylum-seekers are made to wait for months in Mexico while their U.S. immigration cases are pending.

4. Plaintiffs' first hearing in their immigration case was scheduled for September 18, 2019. The day before their hearing M.P.G. and T.N.P. were kidnapped and held for days in Ciudad Juárez, Mexico by individuals who self-identified as members of the Sinaloa Cartel. Consequently, Plaintiffs were unable to attend the first hearing in their immigration case.

5. On December 18, 2019, an Immigration Judge sitting in the El Paso immigration court ordered M.P.G. and T.N.P. removed *in absentia* due to their failure to appear for their September 18, 2019 immigration hearing.

6. After Plaintiffs paid a ransom and were released by their captors, M.P.G. and T.N.P. fled to a relative's home in Guadalajara, Jalisco, Mexico. They resided in southwest Mexico with their relative for approximately one year. During this time the documents authorizing them to stay temporarily in Mexico, received as part of their participation in MPP, expired. Because an *in absentia* removal order had been issued in their case, and their U.S. immigration proceedings had thereby concluded, M.P.G. and T.N.P. were no longer in Mexico pursuant to MPP.

7. Because M.P.G. and T.N.P. were outside the United States during the time that an order requiring their exit from the United States was issued and became final, Plaintiffs were removed. *See United States v. Ramirez-Carcamo*, 559 F.3d 384, 389 (5th Cir. 2009) ("No matter whether the removal order comes first and the alien then departs, or, as here, the departure comes first and then removal is ordered in absentia, the alien ultimately is outside the country with an

enforceable order requiring that he have exited. When both have occurred, the person is considered to have been ... removed in pursuance of law.").

8. Knowing that they would face harm if they returned to El Salvador, in December 2020, M.P.G. and T.N.P. again sought protection in the United States and entered the United States without inspection in or near El Paso, Texas.

9. When an individual unlawfully enters the United States "after having been removed or having departed voluntarily, under an order of removal, the prior order is reinstated...." 8 U.S.C. § 1231(a)(5). If the individual subject to the reinstated removal order "expresses a fear of returning to the country designated in that order" she "shall be immediately referred to an asylum officer" to determine whether she has a reasonable fear of persecution or torture and, ultimately, whether she is eligible for withholding of removal under 8 U.S.C. § 1231(b)(3) or protection under the Convention Against Torture ("CAT"). 8 C.F.R. § 241.8(e); *see also* 8 C.F.R. § 208.31(b).[2]

10. In this case, Defendants have made a final decision to remove Plaintiffs to El Salvador without providing access to any procedures to determine whether they are eligible for withholding of removal or protection under CAT. This violates 8 U.S.C. §§ 1231(a)(5), 1231(b)(3), and Defendants' own regulations, 8 C.F.R. §§ 208.31, 241.8(e). Plaintiffs urge this Court to stay Plaintiffs' removal in order to preserve the status quo while Defendants' obligation to comply with these statutory and regulatory mandates is litigated.

**JURISDICTION AND VENUE**

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question) and 1346 (federal defendant); the Administrative Procedure Act ("APA"), 5 U.S.C.

---

[2] Alternatively, immigration officials may simply refer the individual for ordinary removal proceedings in accordance with 8 U.S.C. § 1229a. *Villa-Anguiano v. Holder*, 727 F.3d 873, 878 (9th Cir. 2013). This action does not challenge Defendants' decision not to refer Plaintiffs for ordinary removal proceedings.

3

§ 500 *et seq.*; the Immigration & Nationality Act ("INA"), 8 U.S.C. §§ 1101 *et seq.*, and its implementing regulations (Title 8 of the C.F.R.); and the United States Constitution.

12. The Administrative Procedure Act ("APA"), 5 U.S.C. § 702, waives Defendants' sovereign immunity where, as here, federal officials have acted in violation of federal law.

13. The Court has authority to grant injunctive relief pursuant to 5 U.S.C. §§ 702 and 706, and FED. R. CIV. P. 65.

14. Venue is proper in the Western District of Texas under 28 U.S.C. §§ 1391(b)(2) and (e)(1) because a significant portion of the events relevant to this action took place in this District.

**PARTIES**

15. Plaintiff M.P.G. is a citizen of El Salvador who seeks relief in this case on behalf of herself and her twelve-year-old daughter, T.N.P., who is also a citizen of El Salvador. M.P.G. and T.N.P. are currently detained by Defendant U.S. Immigration and Customs Enforcement ("ICE") at the South Texas Family Residential Center in Dilley, Texas. Counsel has made Plaintiffs' full names known to the Government.

16. Defendant U.S. Department of Homeland Security ("DHS") is the federal executive agency responsible for enforcing U.S. immigration law. Its component agencies include ICE; U.S. Customs and Border Protection ("CBP"); and U.S. Citizenship and Immigration Services ("USCIS").

17. Defendant Peter T. Gaynor is the Acting Secretary of DHS and is sued in his official capacity. Defendant Gaynor has ultimate responsibility for the administration and enforcement of the immigration laws by DHS component agencies pursuant to 8 U.S.C. § 1103. In this capacity,

4

Defendant Gaynor has direct authority over all policies, procedures, and practices relating to the apprehension of noncitizens at or near the U.S. borders and subsequent processing or removal.

18. Defendant U.S. Customs and Border Protection ("CBP") is responsible for the primary and secondary inspection of noncitizens and the apprehension of noncitizens at or near the U.S. border. CBP's responsibilities also include referring individuals who express a fear of persecution or torture upon return to their country of origin to USCIS for the scheduling of reasonable fear interviews subsequent to the issuance of an order of reinstatement, prior to the individual's removal from the United States.

19. Defendant Mark Morgan is the Senior Official Performing the Duties of the Commissioner on behalf of CBP and is sued in his official capacity. In this capacity, Defendant Morgan directs and oversees CBP's responsibilities issuing orders to reinstate prior orders of removal and referring individuals to USCIS for reasonable fear interviews.

20. Defendant Gloria I. Chavez is the Border Patrol Chief for the El Paso Sector for U.S. Border Patrol. In this capacity, Defendant Chavez directs and oversees Border Patrol's responsibilities including issuing orders to reinstate prior orders of removal and referring individuals to USCIS for reasonable fear interviews.

21. Defendant ICE carries out removal orders and oversees immigration detention throughout the United States. ICE's responsibilities include referring individuals who express a fear of persecution or torture if removed to their country of origin to USCIS for the scheduling of reasonable fear interviews subsequent to the issuance of an order of reinstatement, prior to the individual's removal from the United States.

22. Defendant Tae Johnson is the Senior Official Performing the Duties of the Director on behalf of ICE and is sued in his official capacity. Defendant Johnson directs and oversees ICE's

responsibilities carrying out removal orders and detaining noncitizens throughout the United States. In this capacity he is also tasked with ensuring ICE refers individuals who express a fear of persecution or torture if removed to their country of origin to USCIS for the scheduling of reasonable fear interviews subsequent to the issuance of an order of reinstatement, prior to the individual's removal from the United States.

23. Defendant Joseph Correa Sr. is the Director of the San Antonio Field Office of ICE Enforcement and Removal Operations and is sued in his official capacity. As such, Defendant Correa oversees local compliance with ICE's legal obligations, including referral procedures for reasonable fear interviews, and oversees removal operations that are scheduled for individuals who are detained at the South Texas Family Residential Center in Dilley, Texas.

24. This document refers to Defendants collectively as "the Government."

## STATEMENT OF FACTS

### I. Statutory and Regulatory Background

25. Congress prohibits the removal of noncitizens to any country where their "life or freedom would be threatened" because of their "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3); *see also* 8 U.S.C. § 1231 note (describing U.S. policy "not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture.").

26. Congress and Executive agencies have developed procedures to ensure that this prohibition is followed and to ensure non-citizens who express fear of persecution or torture if removed to their home countries have the opportunity to seek protection in the United States.

27. One such procedure occurs when a noncitizen who has previously been removed or who voluntarily departs the United States, under a removal order, subsequently reenters the United States without inspection. In this situation, immigration officials reinstate the prior removal order pursuant to 8 U.S.C. § 1231(a)(5), which states that if an individual "has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed….".

28. If an individual subject to reinstatement of removal fears return to her country of origin, the immigration laws require that he or she have an opportunity to request protection in the United States through "withholding of removal" and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"). The availability of withholding of removal stems from the Refugee Act of 1980, through which the United States sought to bring its laws into conformity with the 1967 United Nations Protocol Relating to the Status of Refugees, Jan. 31, 1967, 19 U.S.T. 6223. Countries that joined in the 1967 United Nations protocol committed not to "expel or return ('refouler') a refugee in any manner whatsoever to the frontiers of territories where his life or freedom would be threatened on account of his race, religion, nationality, membership of a particular social group or political opinion." 19 U.S.T. at 6276.

29. An individual subject to an order of reinstatement is not eligible for asylum but, to comply with 8 U.S.C. § 1231(b)(3), may still be eligible for withholding of removal or protection under CAT. *See Ramirez-Mejia v. Lynch*, 794 F.3d 485, 489 (5th Cir. 2015). If the individual expresses fear of persecution or torture if removed to her home country, she "shall be immediately

referred to an asylum officer for an interview to determine whether [she] has a reasonable fear of persecution or torture…." 8 C.F.R. § 241.8(e); *see also* 8 C.F.R. § 208.31.

30. To determine whether an individual is subject to reinstatement, immigration officials "shall determine…;" (1) "whether the alien has been subject to a prior order of removal," (2) "the identity of the alien," and (3) "whether the alien unlawfully entered the United States." 8 C.F.R. § 241.8(a).

31. For a noncitizen who is subject to reinstatement of a prior removal order who expresses a fear of persecution or torture, Defendants' binding regulations set out a procedure to determine whether the individual qualifies for withholding of removal or protection under CAT. *See* 8 C.F.R. § 208.31.

32. First, the individual "shall be referred to an asylum officer for a reasonable fear determination." 8 C.F.R. § 208.31(b). Upon receiving the referral, a USCIS asylum officer conducts a screening interview and decides whether the individual has a "reasonable" basis to fear persecution or torture upon removal to the country of origin. *See* 8 C.F.R. § 208.31(c).

33. If the asylum officer issues a positive finding that the individual's fear is reasonable, USCIS refers the case to an Immigration Judge from the Department of Justice Executive Office for Immigration Review ("EOIR") for full consideration of the claim in "withholding-only" proceedings. *See* 8 C.F.R. § 208.31(e).

34. If the asylum officer issues a negative finding, USCIS refers the case to EOIR for a review hearing before an Immigration Judge, who reviews the asylum officer's reasonable fear finding and affirms or vacates the asylum officer's decision. 8 C.F.R. § 208.31(g). If the asylum officer's decision is affirmed, the individual may be removed from the United States. 8 C.F.R.

§ 208.31(g)(1). If vacated, the individual is placed in withholding-only proceedings before an Immigration Judge. 8 C.F.R. § 208.31(g)(2).

35. Withholding of removal and protection under CAT are mandatory, not discretionary. The Government cannot remove an individual who qualifies for these protections. *See Zhao v. Gonzalez*, 404 F.3d 295, 310 (5th Cir. 2005) ("A grant of asylum permits the alien to remain in this country; a withholding of removal forbids his removal to the persecuting country. A grant of asylum is within the Attorney General's discretion, but restriction on removal is granted to qualified aliens as a matter of right.").

## II. Plaintiffs Seek Protection from Persecution and Torture

36. Plaintiffs M.P.G. and T.N.P. are natives and citizens of El Salvador who seek protection from persecution and torture.

37. In El Salvador, M.P.G. and T.N.P. experienced persistent surveillance and threats by the Mara 18 gang, a transnational criminal organization also known as the 18th Street Gang, Barrio 18, and M-18, due to her family's support and work for the Farabundo Martí National Liberation Front ("FMLN"), a prominent political organization in El Salvador. M.P.G.'s mother supported and worked for the FMLN, and both her husband's father and grandfather fought as soldiers on behalf of the FMLN during the Salvadoran Civil War.

38. In or around April 2019 three armed Mara 18 gang members held M.P.G. by the neck, pointed a gun at her head, sliced her with a knife, and threatened to kill her because of her family's ties to the FMLN. M.P.G. escaped this attack with the help of a passerby who intervened with a machete. M.P.G. and T.N.P. fled to the United States seeking protection shortly thereafter.

39. M.P.G.'s husband and minor son were also threatened with death by the Mara 18 gang. They fled El Salvador several months prior to M.P.G. and T.N.P., hoping their departure

would bring an end to the gang's targeting of M.P.G. and T.N.P. M.P.G.'s husband and son are currently in removal proceedings in the United States, where they are pursuing claims for asylum, withholding of removal, and relief under the Convention Against Torture. Their next immigration court hearing is scheduled for September 7, 2021 in Newark, New Jersey.

40. On or around July 12, 2019, M.P.G. and T.N.P. entered the United States for the first time in or near El Paso, Texas, surrendered themselves to Border Patrol agents, stated their fear of returning to El Salvador and expressed their desire to apply for asylum. CBP agents in the El Paso Sector detained M.P.G. and T.N.P., placed them in removal proceedings before an Immigration Judge, and returned them to Mexico under the Migrant Protection Protocols ("MPP") to await their first hearing in immigration court, which was scheduled for September 18, 2019.

41. When CBP agents returned M.P.G. and T.N.P. to Mexico in July 2019 to await their first hearing in immigration court, they were issued a document known as a "Multiple Immigration Form" ("FMM") by the Instituto Nacional de Migración ("INM"), Mexico's immigration enforcement agency. This document authorized M.P.G. and T.N.P. to stay temporarily in Mexico as individuals awaiting their removal proceedings pursuant to MPP.

42. To ensure they were on time for their first hearing in immigration court, M.P.G. and T.N.P. decided to spend the night before their hearing at the Hotel Impala, a hotel in Ciudad Juárez, Mexico located a few blocks from the Paso Del Norte port of entry. When M.P.G. and T.N.P. arrived at the hotel, they were lured to a secluded part of the hotel and confronted by three armed men who informed M.P.G. that they were members of the Sinaloa Cartel. They demanded the phone numbers of several of M.P.G.'s relatives and told M.P.G. that if the family did not pay a ransom, they would cut off her fingers and her daughter's fingers, rape her daughter, and kill them both.

43. M.P.G. and T.N.P. were held for days without access to clean water or food while their family struggled to find the money to pay their ransom. During that time, M.P.G. and T.N.P. missed their scheduled hearing in immigration court and an Immigration Judge signed an *in absentia* removal order.

44. M.P.G. and T.N.P. stayed in Guadalajara, Mexico for about a year, recovering from the trauma they endured while kidnapped. Once they were ordered removed *in absentia* they no longer had temporary permission from Mexican immigration authorities to remain in Mexico, and were at risk of detention or deportation by Mexican authorities.

45. During this time the Mara 18 continued to look for M.P.G. and her family, surveilling their house in El Salvador and asking about their whereabouts. Eventually, M.P.G. and T.N.P. returned to the U.S.-Mexico border to again seek protection in the United States.

46. On December 11, 2019, Plaintiffs entered the United States without inspection in or near El Paso, Texas, and stated their fear of persecution and torture to CBP agents. CBP agents informed M.P.G. and T.N.P. that they had been ordered removed by the Immigration Judge for failing to appear at their prior hearing. CBP subsequently transferred Plaintiffs to ICE custody, and ICE agents decided to detain Plaintiffs at the South Texas Family Residential Center ("STFRC") in Dilley, Texas.

47. In Dilley, M.P.G. and T.N.P. consulted with the Asylum Defense Project's Proyecto Dilley, a pro bono organization that provides free legal services to detained families at the STFRC. On December 23, 2019, Proyecto Dilley emailed ICE, stating Plaintiffs' fear of return to El Salvador and seeking clarification regarding the procedural posture of Plaintiffs' case. ICE did not respond to these communications.

48. On Thursday, January 14, 2021, Proyecto Dilley emailed ICE requesting that M.P.G. and T.N.P. be referred to USCIS for a reasonable fear interview. ICE did not respond.

49. On Saturday, January 16, 2021, an ICE Deportation Officer notified Proyecto Dilley that Defendants intend to remove M.P.G. and T.N.P. to El Salvador on Tuesday, January 19, 2021 at 6:00 A.M.[3]

### III. Plaintiffs' Efforts to Seek Relief from the Immigration Judge

50. Fearful that they were at risk of imminent removal from the United States, on January 4, 2021, M.P.G. and T.N.P. filed a *pro se* Motion to Rescind In Absentia Removal Order and Reopen Removal Proceedings with the Immigration Court in El Paso, Texas, requesting that the Immigration Judge reopen their proceedings so that they may present their claims for asylum.

51. On January 6, 2021, the Immigration Judge denied M.P.G. and T.N.P.'s Motion to Reopen, finding that their case could not be reopened because M.P.G. and T.N.P. are subject to reinstatement of their prior removal order pursuant to 8 U.S.C. § 1231(a)(5).

52. Plaintiffs have no other adequate remedy at law to compel Defendants to comply with statutes and regulatory mandates requiring referral for a reasonable fear interview.

### IV. Defendants Refuse to Provide Access to Procedures Implementing 8 U.S.C. § 1231(b)(3)

53. Although by binding agency regulations Defendants were obligated to expeditiously refer M.P.G. and T.N.P. to USCIS for a reasonable fear interview so that they may present their claims of persecution and torture, Defendants continue to deny this referral to

---

[3] This notice was provided pursuant to the *Orantes* Injunction, a nationwide, permanent injunction that requires DHS to uphold certain rights to ensure Salvadoran nationals are afforded their statutory and regulatory rights to seek protection from persecution and torture in the United States. *See Orantes-Hernandez v. Gonzales*, Dkt. 855, at ¶ 7.a., Case No. 2:82-cv-01107-MMM-VBK (C.D. Cal. Nov. 26, 2007), *available at* https://www.nilc.org/wp-content/uploads/2015/11/orantes_modified_injunction_2007-11-26.pdf (last visited Jan. 18, 2021).

Plaintiffs and have made a final determination not to comply with this obligation in advance of Plaintiffs' removal scheduled for January 19, 2021.

54. On January 14, 2021, attorneys at STFRC requested that ICE refer Plaintiffs to the USCIS asylum office for a reasonable fear interview. ICE did not respond.

55. Defendants' written notice on January 16, 2021 that Plaintiffs are scheduled for imminent removal confirms that Defendants have made a final decision to refrain from referring Plaintiffs for a reasonable fear interview in accordance with 8 C.F.R. §§ 208.31 and 241.8(e).

56. Defendants' position is contrary to the INA. Plaintiffs have been removed pursuant to or have voluntarily departed under their *in absentia* removal order. Federal law makes clear that any individual for whom there exists an administratively final removal order, and who is outside the United States, "shall be considered to have been deported or removed in pursuance of law, irrespective of the source from which the expenses of his transportation were defrayed or the place to which he departed." 8 U.S.C. § 1101(g); *see also United States v. Ramirez-Carcamo*, 559 F.3d 384, 389 (5th Cir. 2009); *see also Toora v. Holder*, 603 F.3d 282, 285-86 (5th Cir. 2010) (finding that individual who left the United States after service of NTA but before receiving an *in absentia* removal order was considered removed for purposes of departure bar on motions to reopen).

57. Although Plaintiffs meet all three predicates for their orders of removal to be reinstated under 8 U.S.C. § 1231(a)(5)—a prior removal order, a removal or departure from the United States under that order, and a subsequent unlawful reentry—and must be referred to USCIS for a reasonable fear interview, CBP and ICE have failed to refer Plaintiffs for the interviews they are due. 8 C.F.R. § 241.8(e); *see also* 8 C.F.R. § 208.31(b).

58. Instead, Defendants have made a final decision to remove Plaintiffs without allowing any further consideration of their claims for protection from persecution and torture.

## CAUSES OF ACTION

59. All of the foregoing allegations of fact are incorporated as if repeated to support each of the following causes of action.

### COUNT 1: Administrative Procedure Act

60. Defendants have made a final decision to not refer Plaintiffs to USCIS for a reasonable fear interview. This constitutes final agency action for which there is no adequate remedy at law. Defendants have no discretion to continue refusing to comply with the INA and binding agency regulations.

61. Because, as set out above, Defendants' actions in denying Plaintiffs access to reasonable fear proceedings violates Due Process, this Court may hold unlawful and set aside this agency action as "contrary to constitutional right." 5 U.S.C. § 706(2)(B).

62. Because Defendants' actions in refusing to refer Plaintiffs to USCIS for a reasonable fear interview violates 8 C.F.R. §§ 208.31 and 241.8(e) and because Defendants' actions in seeking to remove Plaintiffs to El Salvador without providing access to reasonable fear proceedings violates 8 U.S.C. § 1231(b)(3), this Court may hold unlawful and set aside this agency action as "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

63. Because Defendants' actions are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," this Court may hold unlawful and set aside Defendants' failure to refer Plaintiffs for reasonable fear proceedings. 5 U.S.C. § 706(2)(A).

### COUNT 2: Due Process

64. All persons on U.S. soil, including Plaintiffs, are protected by Due Process under the U.S. Constitution's Fifth Amendment.

65. Due process forbids Defendants from arbitrarily causing a noncitizen who has entered the United States to be deported without giving her all opportunity to be heard upon questions involving her right to be and remain in the United States. *United States v. Benitez-Villafuerte*, 186 F.3d 651, 656 (5th Cir. 1999).

66. Congress prohibits the removal of individuals to countries where their lives or freedom would be threatened on account of their race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3).

67. By refusing to refer Plaintiffs to a USCIS asylum officer to determine whether they have a reasonable fear of persecution or torture if removed to El Salvador, Defendants deny Plaintiffs their right to be heard on their eligibility to remain in the United States in violation of Due Process.

## REQUEST FOR RELIEF

WHEREFORE, and in light of the foregoing, Plaintiffs prays that the Court:

A. Preserve the status quo, and immediately stay Plaintiffs' removal until the Court can decide whether Defendants have complied with their legal duties;

B. Order Defendants to comply with their legal duties and provide Plaintiffs access to procedures for determining their eligibility for withholding of removal and protection under the Convention Against Torture;

C. Grant such other and further relief, as the Court deems appropriate and just; and

D. Grant attorney's fees and costs of court.

Dated: January 18, 2020.                    Respectfully submitted,

                                            TEXAS RIOGRANDE LEGAL AID, INC.

                                            */s/ Rebecca Sheff*
                                            Rebecca Sheff

State Bar No. 24113476
1331 Texas Avenue
El Paso, Texas 79901
Tel: (915) 585-5114
Fax: (915) 544-3789
rsheff@trla.org

*/s/ Peter McGraw*
Peter McGraw
State Bar No. 24081036
1206 E. Van Buren Street
Brownsville, Texas 78520
Tel: (956) 982-5540
Fax: (956) 541-1410
pmcgraw@trla.org

ASYLUM DEFENSE PROJECT

*/s/ Shalyn Fluharty*
Shalyn Fluharty*
California Bar No. 270056
1111 N. Main Avenue
San Antonio, Texas 78212
Tel: (917) 364-3419
shay@caraprobono.org

\**Application for admission pro hac vice forthcoming*